**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:18-cr-00075-REP |
| | ) | |
| VIOREL ANTOANEL NABOIU, | ) | |
| a.k.a. "LUIGI LATORZA," | ) | |
| | ) | |
| *Defendant*. | ) | |

**UNITED STATES' POSITION WITH RESPECT TO SENTENCING**

The United States of America, by and through its attorneys, G. Zachary Terwilliger,

United States Attorney for the Eastern District of Virginia, and Brian R. Hood, Assistant United

States Attorney, hereby submits its position with respect to the sentencing factors for the

defendant, VIOREL ANTOANEL NABOIU, a.k.a. "LUIGI LATORZA." The United States has

reviewed the Presentence Investigation Report (PSR), and has no objections to that Report. The

PSR calls for a guideline range of 41-51 months' incarceration on Count One, which charged

defendant with conspiracy to commit bank fraud, and 24 months' consecutive on Count Ten,

which charged the defendant with aggravated identity theft. For the reasons set below, the

Government recommends that the Court impose a guideline range sentence of 65 months'

incarceration.

## I.     CASE SUMMARY

The Statement of Facts (SOF) accompanying the defendant's guilty plea and the PSR set

forth the essential details of the defendant's offense. Around January 2018, the defendant,

VIOREL ANTOANEL NABOIU, a.k.a. "LUIGI LATORZA," paired up with his codefendant,

FLORIN BERANU to participate in an ATM-skimming operation that hit numerous banks in

multiple states. ATM surveillance video reveals that several unidentified subjects also participated at different times with NABOIU and/or BERSANU during the course of the fraud scheme.

As a general matter, every operation to steal debit cards from an ATM that the defendant engaged in followed the same multi-step process. It began with someone in the conspiracy manufacturing a skimming device that was later inserted deep into the card reader slot of the bank branch ATM. This skimming device copied the information on the magnetic stripe of the bank customer's debit card when the customer used the card to conduct his or her own ATM transaction. Typically, on the same day that the skimming device was installed a member of the conspiracy mounted a pinhole camera, hidden behind plastic flashing designed to blend into the ATM's housing, to capture the finger-taps of PINs used by bank customers during their transactions. Later on, one or more members of the conspiracy would return to the ATM to retrieve both the skimming device and pinhole camera, along with all the information electronically stored on those devices. The conspirators would then electronically retrieve the debit card numbers stored on the skimming device, marry those account numbers to the appropriate PINs based on a visual review of the pinhole camera's video footage, and then use this information to encode the stolen debit card numbers onto blank magnetic stripe cards. The final step of the operation involved the conspirators going to ATMs, usually owned by the same bank (*e.g.,* BB&T) from which the numbers were stolen, and making cash withdrawals with the newly encoded cards.

## II. SENTENCING ANALYSIS SINCE *UNITED STATES V. BOOKER*

In *United States v. Booker,* 543 U.S. 220 (2005), the Supreme Court held that mandatory imposition of sentences derived from the Federal Sentencing Guidelines violated a defendant's

Sixth Amendment right to a jury trial. The Court further held that district courts, while not bound to apply the Guidelines, must consult them and take them into account when sentencing, as well as the factors listed in 18 U.S.C. §3553. *Id.* at 265.

In *United States v. Moreland*, 437 F.3d 424 (4th Cir. 2006), the Fourth Circuit described an analytical approach district courts must adhere to in determining an appropriate sentence. The *Moreland* approach requires that a district court: 1) correctly determine the applicable guideline range; 2) assess whether the guideline range satisfies the § 3553(a) factors; 3) consider any appropriate departures under the Guidelines and the case law that might also be necessary; and, finally, 4) consider, and explain, a variance to a non-guideline sentence if such a variance is still required to satisfy the factors in § 3553(a). *Moreland*, 437 F.3d at 432.

Title 18, United States Code, Section 3553(a) mandates that a sentencing court impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a)(2). In determining such a sentence, § 3553 requires that the Court consider the following factors:

> (1) the nature and circumstances of the offense, and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes by the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training; medical care, or other correctional treatment in the most effective manner.

**III.    PRESENTENCE REPORT'S GUIDELINE ANALYSIS**

The applicable guideline section for Count One, conspiracy to commit bank fraud (18

U.S.C. § 1349), is USSG §2X1.1, which cross references to the guidelines for the substantive

offense of bank fraud, *i.e.,* §2B1.1.  Pursuant to §2B1.1(a)(1), defendant's base offense level is 7.

Because the defendant's total loss amount falls between $550,000 and $1,500,000, a 14-level

enhancement applies pursuant to §2B1.1(b)(2)(A).  NABOIU also receives two separate 2-level

enhancements for 10 or more victims, under §2B1.1(b)(2)(A), and possession or use of device-

making equipment, under §2B1.1(b)(11)(A)(1).  With a 3-level reduction for acceptance of

responsibility under USSG §3E1.1, the defendant's Total Offense Level is 22.  The defendant

has 0 criminal history points, and thus with a Criminal History Category of I his guideline range

for Count One is 41-51 months.  The applicable guideline section for aggravated identity theft as

charged in Count Ten is §2B1.6, which calls for imposition of the statutory mandatory minimum

sentence of 24 months' incarceration.  NABOIU's total guideline range is thus 65-75 months.

As reflected in the PSR, paragraphs 54-59, the loss amount attributable to NABOIU

exceeds that of his codefendant BERSANU.  BERSANU did not arrive in the United States until

December 23, 2017.  NABOIU, however, engaged in an identical skimming scheme in

Annapolis, Maryland, from November 19 to November 30, 2017, though with different

coconspirators.  In addition to the 730 debit cards NABOIU and BERSANU successfully

skimmed while working together, NABOIU successfully skimmed another 631 debit cards

working with his Maryland coconspirators.  (PSR page 13, Loss Spreadsheet).  On top of the 85

cards cashed out while NABOIU and BERSANU worked together, NABOIU's Maryland

activity yielded an extra (and coincidental) 85 cards that were cashed out, producing further

actual losses amounting to $100,369.00.  The PSR determined that NABOIU's total loss amount

for sentencing purposes was $796,819.35, consisting of $150,244.15 in total actual losses and $646,575.20 in intended losses.

Including NABOIU's Maryland activity as relevant conduct appears correct. As an initial matter, Count One of the indictment, which charges the defendants with conspiracy to commit bank fraud, alleges, "[b]eginning sometime prior to January 21, 2018, the exact date being unknown to the grand jury . . . BERSANU . . . and NABOIU did unlawfully and knowingly conspire together, as well with others unknown to the grand jury . . . ." By its terms, then, Count One arguably subsumes the Maryland conduct.

Even if the Court were to determine that the Maryland activity falls outside the scope of Count One, general principles contained in the Sentencing Guidelines regarding relevant conduct suggest that inclusion of the Maryland losses is appropriate, and perhaps even required. As a factual matter, NABOIU's conduct in Maryland involved the same offense, *i.e.,* conspiracy to commit bank fraud (because he was working with other individuals), used the same modus operandi, *i.e.,* inserting installing skimming devices and pinhole cameras on bank ATMs to capture debit card numbers and associated PINs, and targeted one of the same victim banks that the defendants hit in Virginia, *i.e.,* BB&T Bank.

Under USSG §1B1.3(a)(1), unless otherwise specified, relevant conduct shall be determined based on: "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," *see* §1B1.3(a)(1)(A); and in the case of a jointly undertaken criminal activity (*a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy*) all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, *see* §1B1.3(a)(1)(B) (emphasis added.) Furthermore, §1B1.3(a)(2) mandates

that the base offense level reflect "all acts and omissions . . . that were part of the same course of conduct or *common scheme* or plan as the offense of conviction."  (Emphasis added.)

Given the strong factual similarities between NABOIU's Maryland conduct and his activity with BERSANU, coupled with clear precedent holding that a sentencing court may—and sometimes must—consider whether uncharged and acquitted conduct were part of the same course of conduct or a common scheme, concluding that NABOIU's Maryland activities are to be included as relevant conduct seems unavoidable.  *United States v. Jinwright*, 683 F.3d 471 (4th Cir. 2012) (district court was entitled to consider loss amounts for acquitted counts of tax evasion in sentencing defendant for conspiracy to commit tax fraud and other tax evasion counts); *United States v. Hayes*, 322 F.3d 792, 801–02 (4th Cir.2003) (vacating and remanding for resentencing because the district court failed to consider, as it was required to do, evidence of losses not contained in the indictment but relevant to the offense of conviction); *see also United States v. Jones*, 31 F.3d 1304, 1316 (4th Cir.1994) (relevant conduct may include criminal acts that preceded the date the convicted offense was committed).

## IV.    FACTORS UNDER 18 U.S.C. § 3553(A)(1)

### A.    Nature and Circumstances of the Offense

NABOIU's card skimming activity is one more example of what is a large burden of access device placed on American businesses.  Estimates of fraud losses attributable to ATM skimming vary, but a conservative estimate of such losses to U.S. banks appears to be in the range of one to two billion dollars annually.[1]

---

[1]  https://www.cnbc.com/2017/09/15/card-sharks-atm-skimming-grows-more-sophisticated.html.  See also the white paper published by ATM manufacturer Diebold entitled *ATM Skimming: Modern Day Bank Robbery*, a copy of which is provided as Attachment 1.

A quick review of open source reporting reveals that ATM skimming operations are often linked to larger organized crime groups.[2]  While the United States has no evidence directly linking NABOIU to a specific, organized crime group in this case, the defendant's criminal conduct is consistent with such activity.  More importantly, even assuming that NABOIU and his coconspirators were not connected to a larger organized criminal enterprise, there is clearly a large external criminal population engaged in the same crime of ATM skimming that this Court should consider within the context of the § 3553(a)(2)(B) factor of deterrence in fashioning an appropriate sentence in this case.

**B.      History and Characteristics of the Defendant**

### 1.      Criminal History

To the best of the government's knowledge NABOIU has no history of prior criminal convictions.  He is therefore a Criminal History Category I for guideline purposes.

### 2.      Personal History and Characteristics

Information regarding the defendant's personal history comes primarily from interviews with the defendant and his older paternal brother.  NABOIU was reportedly born in Craiova, Dolj, Romania, where he spent his youth.  After graduating from high school in 1993 he was conscripted into the Romanian Army and stationed at a base in his hometown.  He rose to the rank of sergeant, was discharged from the Army in 1996, and in 1997 immigrated to Rome, Italy, for economic reasons.  In Rome, NABOIU met his future wife, married her in 2005, divorced her in approximately 2011, and immigrated, again for economic reasons, to Germany to live with his

---

[2] *See, e.g.,* https://www.fbi.gov/news/stories/atm-skimming; https://fox11online.com/news/local/fdl-police-warn-of-organized-crime-group-making-its-way-through-the-area; https://www.registerguard.com/news/20181102/romanian-teens-arrested-in-springfield-in-connection-to-atm-skimming-organized-crime; https://www.reviewjournal.com/crime/courts/bulgarian-crime-boss-gets-prison-in-atm-skimming-scheme/; and https://www.seattlepi.com/local/article/Police-Man-arrested-for-ATM-skimming-has-1422492.php.

sister and brother-in-law.  Through his travels the defendant has become fluent in Italian and learned to speak some Spanish, German and English.

In 2014, the defendant came to the United States and settled in Houston, Texas, where he worked in the construction industry.  He remained in Houston until returning to his hometown in Romania in 2015.  For approximately the next three years NABOIU worked as the general manager of an import-export company in Craiova, Romania.

In November 2017, the defendant traveled to Montreal, Canada, where after a short stay he entered the United States, eventually making his way to Maryland.  He then traveled to Las Vegas, Nevada, where he met his codefendant, FLORIN BERSANU.  The two coconspirators traveled to the Richmond area, arriving around January 10, 2018, whereupon they soon embarked on the criminal scheme that resulted in their prosecutions.

NABOIU states that he is very close to his parents, has no history of either mental or emotional health problems, and has no history of alcohol or substance abuse.

## V.     FACTORS UNDER 18 U.S.C. § 3553(A)(2)

### A.     Seriousness of the Offense

As discussed above, ATM skimming inflicts multi-billion dollar losses on American businesses every year.  NABOIU and his coconspirators skimmed hundreds of debit cards that resulted in significant losses to BB&T Bank.  Such serious criminal conduct warrants a serious sentence, as reflected by the applicable guideline range in this case.

### B.     Need to Deter Future Criminal Conduct

As likewise noted above, the defendant's conduct, while serious, is but a small piece of a much larger and significant problem.  A strong sentence in this case at the upper end of the recommended guideline range should help provide a measure of deterrence, not just to the defendant himself but also to the organized crime groups that are responsible for so much of the

ATM skimming that drains billions of dollars annually from the legitimate economy.

## C. Need to Protect the Public from the Defendant's Future Criminal Conduct

A sentence of 65 months' incarceration would similarly provide appropriate protection to the public from the defendant's future criminal conduct for the period of time he is incarcerated.

## D. Need to Provide Treatment to Defendant

The United States is not aware that the defendant has any medical, psychological or substance abuse issues that require treatment.

## VI. CONCLUSION

For all of the reasons set forth above, the United States asks the court to impose a guideline range of 65 months' incarceration.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By:   /s/  Brian R. Hood
Assistant United States Attorney
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, VA 23219
Telephone: (804) 819-5400
Email: brian.hood@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on **January 3, 2019**, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which will send a notification of such filing

(NEF) to all parties of record.


Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By:    */s/   Brian R. Hood*
        Assistant United States Attorney
        United States Attorney's Office
        919 East Main Street, Suite 1900
        Richmond, VA 23219
        Telephone: (804) 819-5400
        Email: brian.hood@usdoj.gov